Good morning. May it please the Court, James Shaw on behalf of Appellants Mr. Cass Wilson and Mr. Douglas Kruschen. I will attempt to reserve three minutes for rebuttal. This is a case about a design defect in HP laptops where the motherboard connects with the power jack. And as a result of that connection becoming corrupted, the machines become inoperable. And in many instances, including in the case of Appellant Kruschen, the machines, as a result of the design defect, emit sparks, smoke and flames, implicating safety concerns. What exactly is the design defect? The nature of the design defect is such that where the connection occurs, it only contains several small pins with some solder. And because of the instability in that design, as alleged in the second-minute complaint, that becomes corrupted, which results in instability in the electrical charge. The defect you point to is that the connection deprives the port of power. Is that right? Over time, that's correct. Okay. I'm no computer expert, but I'm having some trouble understanding your allegation that there's a safety issue, fire, with the disruption of power to the port. Well, how, you know, it's like you're alleging that the lack of flame to a barbecue creates a safety defect. Explain that to me. Well, I think that what the allegation focuses on is that when you have a corruption in that string, in that system, that as it corrupts, that that causes instability, and it's that instability that led to the series of overheating in Mr. Kruschen's and, as we allege in the second-minute complaint, the instability which led to similar bouts of overheating in multiple other laptops purchased by consumers. How was the corruption caused? Is it oxidation? As alleged in the complaint, there's a cyclic creep fatigue, which, as the machines are turned on and off... You mean it wears out? Yes. Yes. Oh, so the corruption is caused by it wearing out. Yes, at a much higher rate than what should otherwise be... Well, what should? What do you mean by should? Well... Well, are there certain... Look, I don't know anything about these whole things. I know nothing about anything. But let me ask you, if... Is there some kind of an industry standard that is put out and says, you have to have X number of thousand hours where this will work without problem? Is there one? I don't believe there's an industry standard, and we certainly don't plead one, but there is a standard at law to not manufacture a laptop that, because of the nature of a design defect, is going to cause the laptop during normal use to overheat. But isn't that your problem here, counsel? I mean, every manufacturer of a consumer electronic good has a limited warranty. And everybody understands that the reason for that is because everything eventually wears out. I don't care how well it's manufactured, eventually it's going to wear out. And at least as I understand it under California law, the majority opinion is that the manufacturer's duty is embodied within the limited warranty unless there's an express representation to the contrary. Do you disagree with that? I will not disagree with your first statement, Your Honor, that as a general matter, products are going to wear out. I would disagree with the second statement. In Falk v. General Motors, and this is really the case which has kind of spawned the two lines of cases, the issue was whether or not there was a defective speedometer there, whether or not there was a duty to disclose that arose. Now, Judge Alsup, I'll leave that to Judge Alsup today, looked at that and said because the plaintiffs there had pled in their complaint that the speedometer was material and that they had expectations about the usage of a speedometer and how it would function, that it was therefore material. And under the LaMondra v. Judkins factors, that that was material and therefore gave rise to a duty to disclose. Now, what he also did- Correct me if I'm wrong. In that case, though, didn't General Motors know there was a defect in this- I forget what product it was. Part. Did they know? The allegations, as is the case here, the allegations there were that they did, that General Motors did have such knowledge. Okay. But in that case, as I recall, there was actual knowledge. In this case, I think your allegation is that because some people had complained about this along the distribution line over a period of time that they knew then. There is that difference, is there not? Well, I think in terms of the allegations that we have a number of allegations which allege pre-sale to the two appellants' knowledge by HP of the defect. Based upon previous notifications of complaining customers, though, or was it because their own test showed that this was defective? We have alleged that both plaintiffs purchased in the summer of 2004, that we have a specific allegation taking knowledge back to 2002, which is predicated on the fact that if it's a 2004 model, they generally get rolled out in the late summer to fall of 2003. And for a manufacturer such as HP to bring something to market, then it would have been designed and tested before that. Do you rely upon some consumer or customer complaints? Is that correct? We rely in paragraph 34, the second medical complaint, in part on those, on those, to demonstrate, one, that there were complaints about it, but also that in addition to the experience of appellant accretion, there were numerous other examples of the safety issue, which. Isn't it correct that the specific complaints you cite to are either undated or post-date the purchase of the, your client's laptops? That's correct, Your Honor. But. So there's no customer complaint that you can point to that predated their purchase? There's nothing in the second medical complaint that predates the purchase. But, again, we have very specific allegations about the relationship between the timing of our client's purchase. We have allegations about the fact that other identically designed models as it relates to this connection were the subject of complaints and the settlement for these same issues. So we have alleged specific knowledge. We have alleged timeline. Are you talking about the other class section? Pardon? Are you talking about the other class section? Yes. And doesn't that specifically exclude the model of laptops involved here, that class section? That's correct. And the reason it's referenced is for purposes of it's the same design with respect to the connector is the allegation, the defective design. But this model was excluded from that class section, correct? The models at issue in this litigation were excluded from that. That's correct. And lastly, with respect to knowledge, Your Honors, we have specific allegations that because of the inadequate design, any design for reliability testing that would have been done and should have been done would have revealed the inadequacy and that HP as the entity with that knowledge would have had that aggregate data. But isn't that a new standard, though, counsel? Again, going back to what we talked about earlier, every manufacturer of consumer goods knows, as every human that's ever used a manufactured good knows, that over a period of time, varying by appliance or whatever, everything will wear out. Everything will wear out. So the manufacturers give a limited warranty in which they say, for this period of time, we will do X if something goes wrong. For the next period of time, we'll do Y. And eventually, we're not going to do anything because we know things are going to wear out. Clearly, HP had a limited warranty here. You, I gather, don't contend that what you're talking about is covered by the limited warranty. I think you specifically state that it was after that. So if I understand you correctly, you are not alleging that they tested beforehand, found it was defective. You're saying that they should have tested before, and had they done so, they would have found it was defective. Is that your argument? Well, we're alleging that they necessarily would have tested beforehand with design for reliability testing. Okay. But you're saying that they had a duty to do that? I'm not saying that, no, we're not saying the duty was to test. We're saying the duty was to disclose. But they can't disclose what they don't know. I would agree with that. So the point is, I'm trying to isolate this part of it. I understood you to say earlier that, in effect, they had a duty to test this before they sold it. And had they done that, they would have discovered the defect that you allege. Is that the basis of your complaint? That is a part of the basis of their knowledge. Okay. The other part being the complaints by people who had this happen. And I gather you conceded to Judge Hawkins that those complaints came after your client's particular purchases had occurred. Is that correct? Well, we've specifically alleged that HP received complaints before our client's purchases in the summer of 2004, based on the timeline. The complaints of paragraph 34. As to this particular model or models? Yes. Paragraph 34 is a representative sample of complaints about individuals who have experienced the fire issue. And as conceded earlier, those postdate it. Your Honor, if I may address your question about a limited warranty. That changes where a manufacturer has exclusive knowledge of a material fact that's not known to the purchaser. And under Lemandra v. Judkins, as it's set forth in Falk and a myriad of other cases, if knowledge is in the hands of the manufacturer and it's not known to the other party in the transaction and its material, that gives rise to a duty to disclose, independent of whether or not there's a safety issue. And by way of example, if I'm a manufacturer of a laptop and I know at the time I take it to market that I have a chip in there, the day after the limited warranty expires, we'll make the machine inoperable. And it's going to cost $500 to take that chip out and make the machine operable again. Under the line of cases that say that you have to have a safety defect to give rise to a duty to disclose, that would not give rise to a duty to disclose. It's not safety related. Now, is it material? Yes. Would a reasonable consumer believe that to be material before undertaking that purchase? Yes. Is it actionable under the UCL and CLRA? Yes. But not under the line of cases that have taken Falk, which didn't just hold that it has to be a safety defect. Judge Alsop found materiality in the first instance, and then he buttressed it by finding that it was also safety. But he didn't say that safety materiality required safety. He said that that was a factor in materiality. And so under the factors, regardless of whether there's a provision of the limited warranty or not, when there's a transaction, if there is knowledge and about a fact, and the fact is material, that triggers a duty to disclose under the law. But you're dealing with a hypothetical. If I – forgive me, counsel. If I understand it correctly, you're dealing with a hypothetical here, because what you've alleged, as I understand it, is not that the – not that HP did testing and found this hypothetical chip that you're talking about where they knew categorically that when it went out the door, the minute they turned this thing on, bam, it wouldn't work. You're not alleging that. You – earlier it seemed to be implying they had a duty to make that. But let's move that back. The only thing that you're saying, if I understand this correctly, is that at some point prior to the fact – prior to the sale of the computers at issue here, HP received notice from other people involving other models of computer that this particular part was defective. Is that the genesis of your requirement that they affirmatively disclose the existence of a problem? Well, taking – that's not exclusively what the allegations are as to knowledge. And under 9b, with respect to omission-based causes of action, scienter knowledge, there's a relaxed pleading standard. And the standard is you put the defendant on notice so that they can respond yes or no to the allegations. And here we have alleged a timeline where prior to our client's purchase, there was – these were on the market. We've alleged that HP received complaints that any modicum of design for reliability testing would have demonstrated just how inadequate this particular connection was. And as a result of all that – I'm sorry. Is it your contention that any complaints by anybody about a particular part requires, in this case, HP to undertake testing to determine whether there was some basis for the complaint? No, not in every circumstance. I think – Why here? Because from – well, because of, one, the nature of the defect and the safety factor, which is certainly a portion of materiality. Well, the safety – the point is the power turns off. And that gets back to Judge Hawkins' point. I mean, basically, if you said it caused a fire, that's one thing. But in this case, you're basically saying it turns off. No, what we're saying is that in the course of – and I see my time is up. What we're – the entire allegations of the complaint, including what happened to Appellant Crucian and to numerous others, are that the nature of the defect of connection is such is that when it loses stability, it results in the computers becoming inoperable. And when it does that, in many cases, because of the nature of the defect and where that connection is, it results in the machines, including Mr. Crucian's, emitting sparks, flame, becoming hot enough, as alleged in the complaint, to burn flesh. And that we have more than plausibly alleged, based on those facts, that this defect gives rise to that manifestation. Okay. Thank you, Mr. Shaw. We'll now hear from Ms. – did you say Kapoor? Kapoor? It's Kapoor. Kapoor. Thank you. Thank you, Your Honor, and may it please the Court. I am Thenae Evangelos-Kapoor of Gibson Dunning Crutcher, representing Hewlett-Packard. The Court should affirm the district court's order dismissing the case. Plaintiffs are asking this Court to adopt a sweeping rule which would hold manufacturers liable and even subject them to punitive damages every time a defect, alleged defect, arises after a warranty expires. But this would mark a radical shift from the clearly established law in California that holds that manufacturers are not liable, and in cases just like this one, it would effectively eliminate the concept of a limited warranty, as the Court has recognized in its questions. It's clear under California law that a manufacturer's duty to disclose and its liability for latent defects that might arise after the expiration of a warranty is limited to cases involving either an affirmative misrepresentation or in cases where there's knowing concealment of a safety risk. And plaintiffs haven't alleged any facts to establish either one here. And in cases like Daugherty and Barden, the courts in California have clearly adhered to this rule and rejected attempts just like this to hold manufacturers liable in such cases. And here, the district court correctly dismissed the complaint because, as plaintiffs counsel conceded, they don't allege any facts that would establish that HP knew at the time of sale in 2004 that all of these laptops had some alleged latent defect that would give rise to a safety risk. As you know, counsel, opposing counsel contends that earlier complaints prior to the sale of the particular computers at issue here, in effect, put HP on notice of a defect. And the implication is that once you receive such notice that there's an affirmative duty to test and if there is an issue, either correct or disclose. Would you like to comment on that? Is there any law to that effect? Or would that be making new law? Thank you, Your Honor. Well, here there are actually no allegations in this complaint that HP received any consumer complaints or other reports of any alleged defect or problem before plaintiffs bought their computers. Plaintiffs only make the conclusory allegation that HP. Well, I'm not quite sure about that. Let me assume that you're using the same old connection that you've always used, so that all of the prior times that you've had problems and you've settled them, it's the same connection. Or is it? I don't know. Is it the same connection? Is Your Honor asking whether this is the same issue that was? Is it the same connection? I'm sorry. I don't follow the question, Your Honor. In previous cases, as in the. You had prior problems or you had problems with prior models of laptops. Is that correct? Your Honor, there is a previous case, but that was filed in 2006, which is after the plaintiffs bought their computers. Let me ask a factual question, if I might. Is the plaintiff's claim here centered around the connection to the USB port? It centers on the connection between the power jack and the motherboard. And it claims, the complaint claims that the connection is weak and that it leads to the computer losing power. Let's call that the connection. Yes. Following up on Judge Duffy's question, is there any proof or any allegation in the Second Amendment complaint that HPT had had the connection in earlier models and became aware that there were problems with it? No, there is not, Your Honor. Okay. So all of the allegations in the Second Amendment complaint dealing with alleged notice of a defective connector, using the definition that Judge Hawkins gave, all postdate the purchase of the computers at issue here? Yes, Your Honor. That's correct. So there couldn't be a notice concept here? No, there could not. Let's just say, just so I understand everybody's position correctly, let's assume arguendo, that in fact the complaint were amended to allege that the connection, say it was exactly the same except for, you know, other features in the computer, but the connection was there in a computer and in 2002 there were ten complaints alleging the very thing that they're alleging here. Under current law, would that generate an affirmative duty on the part of HP to test the connector and to report problems if there were any? Well, Your Honor, based on the cases, there would have to be facts showing that HP had knowledge at the time of sale. And I would say, based on that hypothetical, that complaints, I mean, there would have to be more than just the concept of general complaints. In other cases, courts have required a lot more to establish knowledge. And, for example, in the Tightsworth case, which is a case that plaintiffs rely on, that's a case where the court held that plaintiffs had alleged knowledge and there by the time of sale, the component that was alleged to be defective was already the leading reason for service calls. There was already the highest rate of return from customers. There was a company conclusion that there needed to be a software remodification. There was an internal product engineer who said there was a problem. So that's a lot more. And other cases have rejected complaints based on even complaints made on the company's own website, even more than the undated complaints that are anonymous and allegedly. So to recapitulate, then, if there's just a complaint, no follow-up, not very many, that kind of thing, that doesn't necessarily require or impose a duty on the manufacturer to investigate, do something further, whereas the other case you cited had lots and lots of complaints. They were obviously concerned about it. They put an engineer on it. They made some other decisions based upon that because they actually then found out that there was a problem. Is that correct? Yes, Your Honor. Yes. In other cases where there's a lot more than is alleged here, there would arguably be knowledge on the part of the manufacturer and, therefore, a duty to disclose at the time of sale. But here plaintiffs are claiming that HP knew at the time they bought their computers that there was this latent defect, that it involved a safety risk, and had a duty to tell every consumer. There are 12 million units of these laptops on the market, and they've been on the market for seven years. And plaintiffs have alleged only one case of one plaintiff who claims to have had this implausible problem, really. So in this case, not only was there not a quantum of complaint that required or generated on HP's side a feeling it needed to investigate further, but what complaints there were were made subsequent to the sale of the computers at issue here. That's correct, Your Honor. And counsel, plaintiffs' counsel conceded that they were all made, the ones that are dated were made after the time of sale, which is the relevant time here. Isn't the test new or should have known? The test, Your Honor, is known in the cases. Should have known is not enough? Well, Your Honor, this is not a negligence case. It's a case about fraudulent business practices that affect the entire market. It's more than just a single plaintiff bringing a negligence claim, and that might be a different standard that involves duties to test and disclose, and that's just not before us here. So I would say no based on the cases. Okay. So if the Court has no more questions. I think not. Thank you very much for your presentation. Counsel, we used up almost all your time. We'll give you one minute to respond. First and foremost, I don't believe that I conceded that the complaint only alleges post-purchase knowledge by HP. On the contrary, there are specific allegations about HP having received customer complaints prior to the purchase. Are they specific? Do they meet specificity requirements, or are they just general allegations? Well, I think that they're general allegations that satisfy the relaxed standard under 9b for omission-based claims. And to quickly answer your Honor's question about is there some duty that arises for a manufacturer once it receives complaints, everything with respect to duty to disclose comes back fundamentally to materiality. And the question is, is the knowledge that a company has, is it material in the transaction? Will a reasonable consumer give import to it? Will it affect a reasonable consumer's decision-making and behavior? And so is there a specific duty? There is a specific duty when the knowledge that's held by a manufacturer and not known to the consumer rises to the level of materiality, which we most certainly believe that a laptop which catches on fire in normal use, that's material information that should have been disclosed. Okay. Thank you both. Thank you for good arguments. And the case just argued of Wilson v. Hewlett-Packard Company is submitted. And the Court stands in recess for the day. All rise. This Court in this session stands adjourned.
judges: Duffy, Hawkins, Smith